UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JANE DOE #4 | Case No. 4:19-cv-01641 |
| v. | Judge Sim Lake |
| SALESFORCE.COM, INC., *et al.* | |

**JANE DOE'S MOTION TO REMAND**

**A.  SUMMARY**

On at least two prior occasions, this Court has declined to find an "egregious" misjoinder and has instead ordered remand of an entire suit where an out-of-state defendant removed a case claiming fraudulent misjoinder. *Centaurus Unity v. Lexington Ins. Co.*, 766 F.Supp.2d 780, 789-90 (S.D. Tex. 2011) (Lake, J.); *Concierge Care Nursing Ctrs., Inc. v. Antex Roofing, Inc.*, C.A. No. H-10-3362, 2010 WL 11578941, at *5 (S.D. Tex. Dec. 16, 2010) (Lake, J.). It should do so again in this case.

There are many reasons why fraudulent misjoinder has been applied sparingly, and found even more rarely, throughout the federal courts in the 23 plus years since *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072-73 (11th Cir. 2000). For starters, the doctrine is unpredictable and confusing. Ronald A. Parsons, Jr., *Should the Eighth Circuit Recognize Procedural Misjoinder?*, 53 S.D. L.REV. 52, 66 (2008); *see also Texas Instruments v. Citigroup Global Markets, Inc.*, 266 F.R.D. 143, 148 (N.D. Tex. 2010) ("In the nearly fourteen years since *Tapscott* was decided, no generally applicable standard has been formulated to guide the determination of when misjoinder is so egregious as to be fraudulent."); *Centaurus*, 766 F.Supp.2d at 789 n.28 ("*Tapscott* did not articulate parameters for the 'egregious' standard,

and courts in this Circuit who have considered the issue have not agreed on what circumstances should qualify as egregious.").

Most critically, fraudulent misjoinder flies in the face of constitutional and statutory limits of federal jurisdiction. Parsons, *supra*, at 65-66. A court cannot have removal jurisdiction when the removing party concedes the validity of a plaintiff's causes of action against a joined in-state defendant. And in this case, there are two Defendants who are Texas citizens. That's two Defendants against whom Salesforce does not contest Jane Doe has a valid cause of action.

Even if this Court were to fully embrace *Tapscott* (which it emphatically should not), Salesforce can't meet its burden to show fraudulent misjoinder. Fraudulent misjoinder elevates the burden of its more common cousin, fraudulent joinder, and requires the removing party to show "no real connection to the controversy" involving the other claims. *Tapscott*, 77 F.3d at 1360 (11th Cir. 1996).

Yet Salesforce is at the center of this human trafficking case. It developed, designed, implemented, and provided ongoing support for custom software programs that powered Backpage.com—the human trafficking site on which Jane Doe was sold. It was the operational system from which Backpage grew and allowed Jane Doe to be trafficked on the Hotel Defendants' premise causing her sale and abuse.

Salesforce nonetheless asks the Court to adopt a legal doctrine courts in this District and throughout the Fifth Circuit have "repeatedly distinguished and declined to follow." *Texas Instruments*, 266 F.R.D. at 152 (internal quotation omitted). The Court should decline this latest invitation by Salesforce to join a minority of a minority of courts and should instead remand this action to state court where it belongs.

### B. FACTUAL BACKGROUND

Jane Doe was trafficked in Harris County beginning in 2014. ECF No. 1-4, Pl's Am. Pet. (Ex. 17), at ¶ 89 (also attached as Exhibit A). She was trafficked in a number of hotels in Texas, who are the Hotel Defendants. *Id.* at ¶¶ 86-92. She was trafficked by pimps and traffickers using Backpage. *Id.* at ¶¶ 52-88. Jane Doe filed suit in the 157th Judicial District Court of Harris County, Texas on February 27, 2018. ECF No. 1-4, Pl's Orig. Pet. (Ex. 1), at *2. She filed her Amended Petition adding Salesforce on April 3, 2019. *Id.* at *1.

During the course of discovery, the previously unknown role of Salesforce in Jane Doe's trafficking came to light. Behind the scenes, Salesforce had been assisting Backpage by designing and fine-tuning its marketing and remarketing efforts. *Id.* at ¶¶ 62-85. Salesforce and Backpage jointly worked to engage traffickers—like the pimps who were trafficking Jane Doe—and helped them acquire customers so that Jane Doe could be bought and sold at the Texas hotels who are co-Defendants. *Id.* at ¶¶ 59-61, 86-92. That makes Salesforce part of the singular venture that trafficked Jane Doe. *Id.*

### C. STANDARD FOR REMAND

"[F]ederal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution and legislation. The parties can never consent to federal subject matter jurisdiction, and lack of such jurisdiction is a defense which cannot be waived." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citations omitted). A defendant can remove a case to federal court only when federal jurisdiction exists, and the removal procedure is properly followed. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

"There is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). The burden remains on the removing party to establish that the case lies within the court's jurisdiction. *Pershing, L.L.C. v. Kiebach*, 819 F.3d 179, 181 (5th Cir. 2016). "Removal statutes are to be construed strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 61 S.Ct. 868, 872 (1941)).

A decision denying remand is reviewed *de novo*. *Manguno*, 276 F.3d at 722. However, an order granting remand to the state court is generally not subject to review on appeal or otherwise. 28 U.S.C. § 1447(d). So long as the court's remand decision is intended to be based upon the grounds listed in 28 U.S.C. § 1447(c)—that is, a procedural defect or a lack of subject matter jurisdiction—the district court's remand order is final and "immunized" from further review. *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 230 (2007) (Scalia, J.). Thus a § 1447(c) remand order is not reviewable even if it is clearly erroneous. *See, e.g., Smith v. Texas Children's Hosp.*, 172 F.3d 923, 925-26 (5th Cir. 1999); *see also Angelides v. Baylor Coll. of Med.*, 117 F.3d 833, 836 (5th Cir. 1997) (declining to follow "the Fourth Circuit's evisceration of § 1447(d) in *Jamison v. Wiley*, 14 F.3d 222, 238-40 (4th Cir. 1994)" by allowing review of a remand error of a "'sufficient magnitude'").

D. **ARGUMENT & AUTHORITIES**

1. **Jane Doe properly brought suit in Texas state court for violations of Texas law and has stated no claims arising under federal law.**

Jane Doe brought suit against Texas citizens, under Texas law, in Harris County, Texas, which is the home of the Hotel Defendants and the location where Jane Doe was

trafficked and harmed. Salesforce does not contest the validity of the claims made by Jane Doe against the Texas citizens under Texas law. ECF No. 1, at ¶¶ 21-22.

### 2. The Hotel Defendants are Texas citizens against whom Jane Doe has a valid cause of action.

The Hotel Defendants are indisputably citizens of Texas, as Salesforce admits. ECF No. 1, at ¶¶ 13-15. The Hotel Defendants are thus in-state defendants pursuant to 28 U.S.C. § 1441(b). Salesforce does not contest that Jane Doe has stated valid claims against these Texas citizens. ECF No. 1, at ¶¶ 21-22.

### 3. Fraudulent joinder and misjoinder look to Texas law and Texas pleadings standards.

For purposes of the improper joinder analysis, the plaintiff's allegations in their Texas state court petition are evaluated under Texas's "fair notice" pleading standard. *SL Pathology Leasing of Texas LLC v. Miraca Life Scis., Inc.*, CIV.A. H-14-3724, 2015 WL 1392967, at *3 (S.D. Tex. Mar. 25, 2015); *see also Smallwood,* 385 F.3d at 573; *De La Hoya v. Coldwell Banker Mex., Inc.,* 125 F. App'x 533, 537 (5th Cir.2005).

Similarly, the applicable standard for misjoinder is Texas Rule of Civil Procedure 40, which allows one party to join their claims against defendants "any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action." *See Texas Instruments Inc. v. Citigroup Global Markets, Inc.*, 266 F.R.D. 143, 142 (N.D. Tex. 2010); *see also Centaurus Unity v. Lexington Ins. Co.*, 766 F.Supp.2d 780, 789 n.27 (S.D. Tex. 2011) (Lake, J.) ("The court concludes[ ] … that state joinder rules should govern since the claimant was required to follow the state's joinder rules when it initially brought suit."). And the federal court sitting in removal jurisdiction can only consider whether there is a reasonable possibility

that the defendants' joinder was not in violation of Texas Rule 40. *Texas Instruments*, 266 F.R.D. at 142 n.14.

### 4. The removing party claiming fraudulent joinder has a heavy burden.

For a lawsuit originally filed in state court, an "action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 547 n.3 (5th Cir. 1981). This is frequently referred to as the "in-state defendant barrier." *E.g.*, *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006).

As with any removal, in the fraudulent joinder context, the removing party "bears the burden of demonstrating fraudulent joinder, and any doubts are resolved **against removal**." *Probus v. Charter Commc'ns, LLC*, 234 Fed.App'x. 404, 406 (6th Cir. 2007) (citing *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)) (emphasis in original).

This burden is a "heavy one." *Highrise Concrete Sys., Inc. v. Ace Am. Ins. Co.*, CV 1:12-131, 2013 WL 12318293, at *2 (S.D. Tex. Mar. 29, 2013). And the removing party has the burden to show "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.*

Fraudulent joinder arises only "when the non-removing party joins a party against whom there is no colorable cause of action." *Saginaw Housing Comm'n v. Bannum*, 576 F.3d 620, 624 (6th Cir. 2009). In reaching its determination, the court looks to state law. *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999). The high standard for a removal requires that "the removing party [ ] present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Id.* In other words, "the removing party must prove … that there is **absolutely no possibility** that

the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999) (emphasis added); *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) ("'There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law.'" (quoting *Bobby Jones Garden Apts., Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)).

     **5.**    **The standard for fraudulent misjoinder is even higher.**

To sustain a removal for fraudulent misjoinder, the removing party must meet an even greater burden. The removing party must show that the cause of action alleged against it has "no real connection with the controversy" involving the in-state defendant. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072-73 (11th Cir. 2000). Mere misjoinder is not enough. *Id.*; *see also Bright v. No Cuts Inc.*, No. Civ.A.03-640, 2003 WL 224343232 (E.D. La. Oct. 27, 2003) (same) (collecting cases).

"[T]he misjoinder inquiry under *Tapscott* that might be done as part of the motion to remand is much broader and forgiving to Plaintiff than the analysis to be done under the joinder rules with regard to [a] motion to sever." *Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co.*, 670 F.Supp.2d 555, 559 (N.D. Tex. 2009). "Only the most 'egregious' instances of misjoinder rise to the level of fraudulent misjoinder: those in which the 'wholly distinct' claims of, or against, the non-diverse parties are so lacking any 'real connection with the controversy' that their joinder 'border[s] on a sham." *Texas Instruments Inc. v. Citigroup Global Markets, Inc.*, 266 F.R.D. 143, 147 (N.D. Tex. 2010) (*quoting Tapscott*, 77 F.3d at 1360). Given

this high burden, fraudulent misjoinder "is reserved for a very small handful of the most extreme cases." *Id.* at 152.

The obstacle to removal facing the removing party is so sufficiently great that, "the overwhelming majority of those cases [alleging fraudulent misjoinder] have been remanded to state court, often on the ground that even if the parties have been misjoined, such misjoinder is not so egregious to be fraudulent." *Id.* (collecting cases); *see also Centaurus Unity v. Lexington Ins. Co.*, 766 F.Supp.2d 780, 789-90 (S.D. Tex. 2011) (Lake, J.) ("[E]ven assuming that [Texas] Rule 40 is not satisfied, there is no evidence demonstrating that the joinder of [the in-state defendant] is sufficiently 'egregious' to be deemed fraudulent.")

**6. Salesforce's invitation for this Court to join the few that have accepted the fraudulent misjoinder doctrine should be rejected.**

There are only a handful of courts that have fully recognized fraudulent misjoinder. The number that have given it enough weight to deny remand is far paltrier.

To adopt its misjoinder theory, Salesforce hangs its hat on the Eleventh Circuit's 1996 case, *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996). But the Fifth Circuit has never adopted *Tapscott*.

In fact, *Tapscott*'s adoption over the last 23-plus years has been altogether limited. "The United States Supreme Court, for its part, has never addressed fraudulent misjoinder or offered any indication that the doctrine represents an exception to the complete diversity requirement." *Wilson v. State Farm Mut. Auto. Ins. Co.*, No. 4:17-cv-124-DMB-JMV, 2018 WL 1096836, at *2 (N.D. Miss. Feb. 28, 2018). In declining to accept or reject the decision, the Eighth Circuit observed, "the Eleventh Circuit is the only federal appellate court to adopt fraudulent misjoinder[;] the Fifth and Ninth Circuits have acknowledged it, although not expressly adopted it." *In re Prempro Prods. Liability Lit.*, 591 F.3d 613, 620 n.4 (8th Cir. 2010);

*see also Lafalier v. State Farm Fire and Cas. Co.*, 391 Fed.Appx. 732, 740 (10th Cir. 2010) ("No circuit has rejected the doctrine, but the district courts and the commentators are split."); *Wilson*, 2018 WL 1096836, at *2 ("Consistent with the strict interpretation approach, district courts outside the Fifth Circuit have declined to adopt the fraudulent misjoinder rule without express guidance from the United States Supreme Court or the controlling Court of Appeals.").

"District courts within the Fifth Circuit … have repeatedly distinguished and declined to follow *Tapscott*." *Texas Instruments*, 266 F.R.D. at 152 (internal quotation omitted); *see also Johnson v. Glaxo Smith Kline*, 214 F.R.D. 416, 420 (S.D. Miss. 2002) ("[D]istrict courts in the Fifth Circuit have distinguished *Tapscott* and refused to find fraudulent [mis]joinder in the plaintiffs' choice to join certain defendants."); *Moore v. SmithKline Beecham Corp.*, 219 F.Supp.2d 742, 745 (N.D. Miss. 2002) (collecting cases).

### 7. Jane Doe's claims against Salesforce have a "real connection" to those against the Texas Defendants.

Even if the Court were to apply *Tapscott* (which it decidedly should not), Jane Doe's claims against Salesforce and the Texas Defendants easily share a "real connection" sufficient to meet *Tapscott*'s test.

The Northern District of Texas found there was "no generally applicable standard … to guide the determination of [fraudulent] misjoinder." *Texas Instruments Inc. v. Citigroup Global Markets, Inc.*, 266 F.R.D. 143, 149 (N.D. Tex. 2010). A survey of cases it conducted found "misjoinder is so egregious as to be fraudulent only in … three situations:"[1]

> (1) two or more lawsuits with little or no party overlap have been combined in the same action (*i.e.*, there are multiple plaintiffs and defendants, but each plaintiff or discrete set of plaintiffs is suing only one defendant or a discrete set

---

[1] *Id.*

of defendants); (2) numerous plaintiffs have sued a common defendant and assert claims that have no shared factual element other than the presence of the common defendant; and (3) a single plaintiff or group of plaintiffs has joined multiple defendants in the same action and is asserting claims against each defendant that are both factually and legally unrelated.

Because there is only one plaintiff in this case, the only situation that could even conceivably apply to this case is the third—that is, where a plaintiff's claims against multiple defendants are **both** legally **and** factually unrelated. For the purposes of this case, that means that Salesforce must show Jane Doe's claims against it are legally **and** factually unrelated to her claims against each one of the Texas Defendants.

Here, both the facts and the law giving rise to Jane Doe's claims lawsuit are clearly related. Against Salesforce and the Texas Defendants, Jane Doe has alleged the same causes of action (violations of Texas Civil Practice & Remedies Code chapter 98, negligence, and gross negligence), leading to the same or similar questions of law. More than that, in fact, Jane Doe alleges Salesforce, Backpage, and the Texas Defendants were part of a **single human trafficking venture under Texas law**:[2]

> 141. Defendants knowingly and intentionally participated in a venture that violated multiple sections of Texas Penal Code chapter 20A.
>
> 142. Jane Doe #4 will therefore seek punitive damages against Defendants in excess of the (unconstitutional) statutory cap on exemplary damages.

"Where, as here, a lone plaintiff alleges the same cause of action against every defendant based on a similar or overlapping set of facts, no authority supports the conclusion

---

[2] Ex. A, at ¶¶ 141-42.

that the defendants have been egregiously misjoined." *Texas Instruments*, 266 F.R.D. at 152-53. And so Salesforce's misjoinder argument fails.

### 8. Jane Doe's claims against Salesforce arise from the same venture as the claims alleged against the Texas defendants.

There was a single venture at work that trafficked Jane Doe. Ex. A, at ¶¶ 22, 133-42. She was sold on Backpage, where her pimp and her johns were marketed to using a CRM, marketing and payment platform custom-built by Salesforce. *Id.* at ¶¶ 59-85. Once a john set up a transaction, Jane Doe was sold and abused at one of the Hotels. *Id.* at ¶¶ 86-92.

Texas Rule 40 does not require "absolute identity of all events." *Texas Instruments*, 266 F.R.D. at 152 (quoting *Lott v. Eastman Kodak Co.*, No. 3:97-cv-2560-P, 1999 WL 242688 (N.D. Tex. Apr. 16, 1999). Under Texas Rule 40, Jane Doe validly joined her claims against Salesforce, Backpage, and the Hotels—all of which share a common set of factual and legal questions.

All the defendants in this lawsuit needed one another and benefitted financially from the venture that trafficked Jane Doe. The hotels took money to provide a place for Jane Doe's abuse. Ex. A, at ¶¶ 89, 126-27. Jane Doe's trafficker got money for compelling sex. Backpage got money for publishing Jane Doe's ad. *Id.* at ¶¶ 82-85. And Salesforce got money for working in tandem with Backpage to build and maintain the database that allowed the rest of the transaction to occur. *Id.* at ¶¶ 12-13. That's exactly the type of (singular) venture envisioned by Texas Civil Practice and Remedies Code chapter 98. And that's why Jane Doe asks to hold Salesforce jointly and severally liable for damages its joint venture caused to her, as Salesforce expressly acknowledges in its Removal. ECF No. 1, at ¶ 22.

Contrary to Salesforce's assertions, the claims against it are inextricably intertwined with those against the in-state defendants, including the Hotel Defendants. Even if this Court

had jurisdiction (and it does not), it could not to sever Jane Doe's claims against Salesforce. Salesforce is not only a properly joined party, but a necessary one.

E.  **CONCLUSION**

The Court should reject Salesforce's invitation to apply the fraudulent misjoinder doctrine. But even if the Court were inclined to entertain such an analysis, Jane Doe's claims against Salesforce stem from its involvement in a single venture with the Texas Defendants. They share questions of law and fact. The claims are not subject to severing.

This Court does not have jurisdiction, and the case should be remanded.

Respectfully submitted,

**ANNIE MCADAMS, PC**

By: */s/ David E. Harris*
**Annie McAdams**
Texas Bar No. 24051014
S.D. Tex. No. 1514589
**Matthew S. Parmet**
Texas Bar No. 24069719
S.D Tex. No. 1076547
1150 Bissonnet
Houston, Texas 77005
phone  713 785 6262
fax      866 713 6141
annie@mcadamspc.com
matt@mcadamspc.com

**THE GALLAGHER LAW FIRM**
**Michael T. Gallagher**
Texas Bar No. 07586000
**Pamela McLemore**
Texas Bar No. 24099711
2905 Sackett Street
Houston, Texas 77098
Phone 713 222 8080
Fax     713 222 0066
mike@gld-law.com
pamm@gld-law.com

- 13 -

**SICO HOELSCHER HARRIS LLP**
**David E. Harris**
Texas Bar No. 24049273
S.D. Tex. No. 712461
**Louie J. Cook**
Texas Bar No. 24101191
802 N. Carancahua, Ste. 900
Corpus Christi, Texas 98401
phone  361 653 3300
fax       361 653 3333
dharris@shhlaw.com
lcook@shhlaw.com

**Attorneys for Jane Doe #4**